IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD a/s/o SOUTH GEORGIA PECAN CO., INC.<br>   Plaintiff, | : : : : | CASE NO. 7:05-CV-31 (HL) |
| vs. | : | |
| THE GENLYTE GROUP, INC., and GENLYTE THOMAS GROUP, LLC<br>  Defendants/Third Party Plaintiffs, | : : | |
| vs. | : | |
| PHILIPS ELECTRONICS NORTH AMERICA CORPORATION d/b/a PHILIPS LIGHTING CO.,<br>  Third-Party Defendant. | : | |

## PLAINTIFF, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD'S, MOTION FOR SANCTIONS FOR DEFENDANT'S FAILURE TO DISCLOSE EVIDENCE OF SIMILAR FIRES DURING DISCOVERY

**A.   SUMMARY AND RELIEF REQUESTED**

Now comes Plaintiff, National Fire Insurance Company of Hartford, and Moves this Honorable Court for an Order sanctioning Defendants for their intentional and knowing failure to disclose and produce relevant and material evidence. Plaintiff brings this motion, because Defendants, The Genlyte Group, Inc., and Genlyte Thomas Group, LLC (hereinafter collectively "Genlyte"), have known since November of 2005 of physical evidence, witnesses and documents regarding a fire identical to the fire alleged in Plaintiff's Complaint but intentionally withheld all information about this fire until over one and a half years later. Genlyte's conduct has not only prevented Plaintiff from conducting discovery regarding this fire but has also prevented Plaintiff

from utilizing any information regarding this fire to rebut the contentions raised by Genlyte in its motions to dismiss. In addition, it should also be noted that Genlyte now claims that the physical evidence it received regarding this fire has been misplaced and/or lost; therefore, Plaintiff cannot examine this evidence and comparing it to the physical evidence in this case.

Genlyte objected to these requests and refused to provide the information sought by Plaintiff. Plaintiff was then forced to file a Motion to Compel responses to these discovery requests. On December 5, 2005 this Honorable Court entered an Order on Plaintiff's Motion to Compel requiring Genlyte to provide all documents and evidence related to similar fire claims. (**Exhibit B**, Order of December 5, 2005). Despite this Court's Order, as well as repeated and ongoing requests from counsel for Plaintiff, Genlyte continued to withhold the information regarding this identical fire that they had discovered in November of 2005. Further, Genlyte actively misled Plaintiff by providing discovery responses on October 30, 2006 which purported to include all instances of similar fire claims. (**Exhibit C**, October 30, 2006 e-mail correspondence). Finally, at 4:50 p.m. on June 21, 2007, **after** Plaintiff had filed their responses to Genlyte's Motion for Summary Judgment and Motion for Sanctions, Genlyte provided Plaintiff with information about the identical fire. (**Exhibit D**, Supplemental Answers to Plaintiff's Supplemental Interrogatories). This information was provided **after** discovery in this case had closed and after last possible opportunity Plaintiff had to respond to Genlyte's motions to dismiss. Further, as discussed below in more detail, Defendants failed to retain any of the physical evidence related to the prior fire thereby preventing any entity from comparing this evidence with the physical evidence in this case. Consequently, Plaintiff cannot utilize evidence from the prior fire to bolster its claims and refute defendant's allegations of prejudice related to its spoliation contention.

2

For this reason, Plaintiff is now left without recourse for Defendants' intentional and knowing spoliation and failure to disclose key evidence and will be irreconcilably prejudiced in preparing their case for trial. Plaintiff's only remedy is for this Honorable Court to sanction Defendants by striking off the affirmative defenses raised by Genlyte as to defect and spoliation of evidence and by instructing the jury that they may infer that the evidence spoliated by Defendants would have been unfavorable to the same.

**B.      EVIDENCE THAT WAS CONCEALED**

In early November of 2005 Defendants learned of a fire involving the same metal halide fixture as the one at SGP. The fire was reported by a customer of Genlyte, J & S Electric in Los Angeles, California. (See Dep. of H. Wingerter, Pgs. 18-19). Mr. Wingerter, the Quality Manager for Genlyte, acknowledged that he saw the similarities between the November 2005 fire and the fire at SGP. (See Dep. of Wingerter, Pgs. 25-26, 59-61, filed and of record). Moreover, he claims to have written a report about the fire and obtained physical evidence from J&S Electric relating to the fire. (See Dep. of Wingerter, Pgs. 43-44). Although Genlyte has had information regarding this identical fire since November of 2005 and, in fact, advised its counsel of the same, **Genlyte intentionally withheld this information from Plaintiff for twenty months. It was only until July 16, 2007, after the close of discovery and after Plaintiff could respond to Genlyte's motions to dismiss, that Genlyte provided any information to Plaintiff about the identical fire.** Further, Genlyte now claims that it cannot locate the physical evidence related to the identical fire, although it was mailed to them by J&S Electric in November of 2005. The conduct of Genlyte and its counsel is especially egregious in this case, because this Honorable Court ordered Genlyte to disclose the withheld information almost two years ago.

3

## C.     HISTORY OF CONCEALMENT

On May 12, 2005, Plaintiff served Genlyte with Plaintiff's First Set of Interrogatories and First Request for Production of Documents wherein Plaintiff asked Genlyte to "identify all complaints in which it is alleged that a metal halide light fixture sold, distributed or manufactured by the responding defendant caused or contributed to the cause of the fire..." (**Exhibit A,** First Set of Interrogatories/First Request for Production of Documents). Plaintiff's further requested that Genlyte produce "all correspondence and complaints... received by the responding defendant pertaining to claims that metal halide light fixtures manufactured or sold by the responding defendant caused a fire..." (**Exhibit A,** First Set of Interrogatories/First Request for Production of Documents).[1]

On December 5, 2005, in spite of Defendants' objections and refusal to respond to the above discovery requests, this Court ordered Defendants: "**to identify and produce** documents related to all complaints, received within the last six years, in which it is alleged that Stonco metal halide light fixtures caused or contributed to the cause of a fire." (**Exhibit B,** Order of December 5, 2005).

Although Genlyte possessed documentation, physical evidence and other information regarding the prior identical fire in November of 2005, Genlyte intentionally defied this Court's Order and refused to disclose it to Plaintiff. During this time of defiance, counsel for Plaintiff repeatedly requested the information which this Court had Ordered Genlyte to provide. (**Exhibit E,** Correspondence dated 1/12/06, 1/24/06, 2/3/06, 2/13/06 and 10/6/06). Finally, on October 30, 2006, counsel for Genlyte provided Plaintiff with documentation regarding prior complaints.

---

[1] Plaintiff sought information as to similar fires as "evidence of other similar accidents is admissible in Georgia to establish a manufacturer's knowledge of a defect and the existence of a dangerous condition. *Cooper Tire & Rubber Co. v. Crosby*, 273 Ga. 454, (2001); *Stovall v. Daimler Chrysler Motors Corp.*, 270 Ga.App. 791, (2004).

4

Remarkably absent from this disclosure was any mention of the J&S Electric fire. Nonetheless, based upon the representations of counsel that the documents provided had identified all prior complaints, Plaintiff discontinued their requests for the same. (**Exhibit C**, October 30, 2006 correspondence).

Thereafter, on February 28, 2007, Plaintiff deposed Genlyte's expert, Dr. Donald J. Hoffman, and learned that Genlyte had sent him several exemplar lenses for testing.[2] (See Dep. of Dr. Hoffman, Pg. 35, filed and of record). Since one of the lenses was a thinner lens from 1997, Plaintiff immediately became suspicious as to the origin of the lenses. As such, Plaintiff served Genlyte with supplemental discovery requests, which sought the identity and source of the lenses, the date they had been obtained, and the production of any documents related to the source of the lenses. (**Exhibit F**, Plaintiff's Supplemental Interrogatories to Defendants, March 8, 2007). Once again, however, Genlyte refused to provide Plaintiff with the requested information. Therefore, counsel for Plaintiff then sent two additional letters requesting the information on April 5, 2007, and April 10, 2007. Plaintiff also sought to depose a corporate designee of Genlyte with the most knowledge as to the origin of the lenses. (**Exhibit G**, April 5, 2007 Correspondence; **Exhibit H**, April 10, 2007 correspondence). In response to Plaintiff's April 10th letter, Genlyte provided counsel for Plaintiff with more evasive discovery responses by stating:

> Defendants state that they are diligently seeking the documents and information responsive to this request. To the extent responsive materials exist, Defendant will supplement their response to this request when the information is obtained.

---

[2] The lenses which had been provided to Dr. Hoffman were not the lenses which were burnt in the November 2005 fire which were spoliated by Genlyte, rather, they were another set of exemplar lenses from the same facility where the fire had occurred. The actual lenses which were damaged by the J & S fire have never been accounted for.

5

(**Exhibit I,** Responses to Plaintiff's Supplemental Interrogatories and Requests for Production). In addition to this evasive response, Genlyte also threatened to file a Motion to Quash Plaintiff's corporate designee deposition notice. (**Exhibit J**, April 10, 2007 e-mail correspondence).

Finally, on June 21, 2007, **at 4:50 p.m.**, *after* Plaintiff had filed its responses to Genlyte's motions to dismiss, and *2½ years* since Plaintiff originally served their First Set of Interrogatories and Requests for Production of Documents, Genlyte finally provided *supplemental* answers to Plaintiff's discovery requests regarding the lenses. The source of the lenses was identified as J & S Electric, 825 McCadden Place in Los Angeles, California. [Hereinafter, "J &S"]. (**Exhibit D**, Answers to Plaintiffs Supplemental Interrogatories/Requests for Production). Based upon this information, Plaintiff immediately sought the deposition of a corporate designee from Genlyte to explain how they obtained lenses from J & S.

On July 16, 2007, Plaintiff deposed Harry Wingerter, the Quality Manager for Genlyte, was then deposed on July 16, 2007. During his deposition, Mr. Wingerter stated that the lenses had been received by him in November of 2005, after a customer reported that a Genlyte light fixture had caused a fire. (Dep. of H. Wingerter). Mr. Wingerter acknowledged that the J & S incident involved a fire which originated in a Genlyte metal halide light fixture which was the same make and production year as the fixture in this case. (Dep. of H. Wingerter, Pgs. 25-26). Moreover, he testified that the circumstances of the J & S incident were similar to the circumstances of the fire at SGP. (Dep. of H. Wingerter, Pgs. 25, 26, 31, 32, 34, and 59-60). Finally, he testified that he had received the fixtures involved in the fire but somehow misplaced or otherwise lost this physical evidence. (Dep. of H. Wingerter, Pgs. 25, 26, 31, 32, 34, and 59-60).

6

It was now clear that the J & S incident was known to Defendants 1) **prior to** the entry of the Court's Order of December 5, 2005 requiring disclosure of **exactly** this type of information in response to Plaintiff's discovery requests; 2) **as of** October 30, 2006 when they provided false and misleading responses to Plaintiff's discovery requests by disclosing only two other similar fire claims which did not include the J & S incident, and 3) **as of** April 10, 2007 when they again provided false and misleading responses to Plaintiff's supplemental discovery requests claiming that they were "diligently seeking documents responsive to this request."

As a result of Defendants' intentional concealment of relevant and discoverable evidence, Plaintiff is at a great disadvantage at this late stage of litigation. Only this Honorable Court can level the playing field by sanctioning Defendants for their wanton violation of this Court's December 5, 2005 Order and the Rules of Civil Procedure by striking the affirmative defenses of lack of defect and spoliation of evidence and by giving the jury an adverse inference instruction as to the spoliated evidence.

**D.   LEGAL ARGUMENT**

    **1.   SANCTIONS SHOULD BE IMPOSED UPON DEFENDANTS FOR THEIR INTENTIONAL FAILURE TO DISCLOSE AND SUPPLEMENT DISCOVERY.**

Federal Rule of Civil Procedure 26 sets out the General Provisions Governing Discovery and Duty of Disclosure. Rule 26(e) entitled <u>Supplementation of Disclosures and Responses</u>, states in relevant part that:

> A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:
>
> (2) A party is under a duty seasonably to amend a prior response to an interrogatory... if the party learns that the response is in some material

7

> respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Federal Rule of Civil Procedure 37 sets forth sanctions to be imposed for failure to make or cooperate in discovery. In particular, Rule 37(c)(1) states in relevant part that:

> A party that without substantial justification fails to...amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial... information not so disclosed. In addition or in lieu of this sanction, the court, on motion... may impose other appropriate sanctions... these sanctions may include any of those sanctions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Fed. R,. Civ. P. 37(c)(1).

Sanctions, which may be imposed under Rule 37, include:

> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action...
> (B) An order refusing to allow the disobedient party to support or oppose designated claims of defenses, or prohibits that party from introducing designated matters in evidence
> (C) An order striking out pleadings... or rendering a judgment by default against the disobedient party.

Fed. R. Civ. P. 37(b)(2).

Rule 37 sanctions are "intended to 1) compensate the court and other parties for the added expense caused by discovery abuses, 2) compel discovery, 3) deter others from engaging in similar conduct, and 4) penalize the offending party or attorney." *Wouters v. Martin County, Fla.,* 9 F.3d 924, 933 (11th Cir.1993); *see also Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir.1979); *Adolf Coors Co. v. Movement Against Racism,* 777 F.2d 1538 (11th Cir.1985). The alternative sanctions listed in Rule 37 give judges "broad discretion to fashion appropriate sanctions for violation of discovery orders." *Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536, 1542 (11th Cir.1993), *cert. denied* 114 S.Ct. 181 (1993).

8

It is entirely proper and warranted for this Honorable Court to impose harsh sanctions upon Genlyte in the instant case for their intentional and wanton disregard of both this Court's Order of December 5, 2005 and the Federal Rules of Civil Procedure. Sanctions such as the striking of affirmative defenses and an adverse inference jury instruction are entirely justified by Defendants' "persistent pattern of delay, defiance of court orders, evasive responses to plaintiffs' discovery requests, and lack of candor…" *Wachtel v. Health Net, Inc.* 239 F.R.D. 81 (D.N.J., 2006). *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945; *R.A. Siegel v. Bowen*, 246 Ga. App. 177 (2000).

### a) Genlyte's Affirmative Defenses as to Lack of Defect in Their Product and Spoliation of Evidence Should be Stricken, as Plaintiff was Denied the Opportunity to Discover Facts Necessary to Rebut These Defenses

"[T]he law of the United States, as well as the laws of many of the states, afford examples of **striking out pleadings** and adjudging by default for a failure to produce material evidence, the production of which has been lawfully called for." U. S. Rev. Stat. § 724, (drawn from) § 15 of the judiciary act of 1789 [1 Stat. at L. 82, chap. 20, U. S. Comp. Stat. 1901, p. 583]. For example, the Court in *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee* 456 U.S. 694, 102 S.Ct. 2099, (U.S.Pa.,1982), overruled an objection to personal jurisdiction as a sanction for the failure by the defendants to provide documents regarding personal jurisdiction, as required by a discovery order. The Supreme Court upheld the sanction and explained that because of the failure of the defendants to provide discovery, the plaintiff was unable to determine the extent of contacts between the defendants and the forum state. The Court concluded that the sanction was "specifically related" to the discovery abuse, because the imposition of the sanction "took as established the facts ... that [the plaintiff] was seeking to establish through discovery." *Id.* at 709. Thus, a court may strike defenses which are

9

"specifically related to the particular 'claim' which was at issue in the order to provide discovery," *id.* at 707. *Serra Chevrolet, Inc. v. General Motors Corp.* 446 F.3d 1137, (C.A.11 (Ala.),2006).

The logic behind this rule is that there arises **"the presumption that the refusal to produce evidence ... was but an admission of the want of merit in the asserted defense."** (emphasis added). *Id.* Therefore it was proper that "[t]he sanction took as established the facts that [the movant] was seeking to establish through discovery." *Id.* Because of petitioners' failure to comply with discovery orders, respondent was unable to establish facts as to the critical issue in the case. See *Insurance Corp. of Ireland*, supra. In simpler terms, if the moving party is unable, because of the dilatory actions of the respondent, to establish certain facts, then it is entirely proper for the court to strike defenses related to those facts. Numerous other courts have utilized the sanction of striking or barring an answer or defense pursuant to Rule 37 after a party's complete failure to comply with discovery orders. See generally; *Bergman v. U.S.*, 565 F. Supp. 1353 (W.D. Mich. 1983). [Court denied reconsideration of order that barred U.S. from presenting part of defense after government refused to comply with discovery order]. *See also*; *Nippon Fire & Marine Ins. Co., Ltd. v. M/V Egasco Star*, 1996 WL 74745 (S.D.N.Y. 1996). [Defendant had failed to adequately explain failure to comply with court's discovery order]. *Callwood v. Zurita*, 158 F.R.D. 359, 31 Fed. R. Serv. 3d (LCP) 597 (D.V.I. 1994). [Defendant failed to comply with four separate discovery orders barred from bringing defense against factual allegations in plaintiff's complaint]. *Wight v. Agristor Leasing* 113 F.R.D. 498 (D.Kan.,1985). [Failure of defendant to provide answers to interrogatories and requests for production of documents as required by magistrate's order constituted flagrant disregard of order warranting striking of defendant's affirmative defenses].

10

In the case at bar, Genlyte's failure to provide discovery as to the J & S incident has prevented Plaintiff from being able to garner additional evidence to support its prima facie case against Genlyte. For example, Plaintiff could have utilized the utilized evidence from the J&S fire to refute the contentions of Genlyte's experts that the subject lens cannot be ignited by bulb fragments. Further, Plaintiff could have compared the post-fire conditions of the J&S fixture to the fixture in this case to show burn pattern similarities, which would corroborate the opinions of Plaintiff's experts as to the location of fire origin. In sum, Plaintiff has been robbed of its ability to rely upon information regarding the J&S fire to further substantiate Plaintiff's theory that Genlyte's fixtures are defective and cause fires.[3] [4]

In addition, Plaintiff has been deprived of its ability to rely upon information and evidence from the J&S fire incident to negate the numerous unsubstantiated arguments raised by Genlyte in its spoliation motion. In particular, Genlyte claims that all bulb fragments and lens remains would have survived the fire and should have been retained by plaintiff. If Genlyte had provided Plaintiff with information regarding the J&S fire in 2005, Plaintiff could have compared the evidence remaining after the J&S fire to the evidence remaining after the fire in this case to determine what materials would actually survive a fire. Genlyte, however, refused to provide discovery regarding the J & S incident and has deprived Plaintiff of its ability to utilize any of this evidence to rebut Genlyte's unsubstantiated spoliation claims.

---

[3] This information is especially relevant in light of the holdings in *Cooper Tire & Rubber Company and Stovall.*

[4] One way for this Honorable Court to remedy the fact that Plaintiff has been prevented from gathering evidence as to the J & S incident would be to permit further discovery on that issue. As noted herein, Plaintiff has filed this date a separate Motion for Leave to Amend the Pre-Trial Order and allow further discovery. As evidence of the need for continued discovery, counsel for Plaintiff contacted Joseph Shanihan, the principal of J & S Electric, in order to obtain further information about the J & S incident and the lenses which were sent to Stonco-Genlyte. Mr. Shanihan advised that the lenses were sent by Delta Tau Data Systems (the customer who had experienced the fire) and that Shanihan followed up a few weeks later to see if the lenses and fixtures had arrived. Mr. Shanihan stated that Stonco-Genlyte claimed the lenses had been misplaced after arrival at their warehouse in New Jersey. While counsel for Plaintiff attempted to have Mr. Shanihan execute an affidavit as to these facts, they were unable to do so. It is imperative that Plaintiff be able to depose Mr. Shanihan to gather further information about the fixtures and lenses sent to Defendants in order to support their prima facie case against Defendants.

11

Genlyte's actions in withholding the above information were intentional and in willful disregard of the rules of civil procedure. Genlyte and its counsel knew as far back as November of 2005 of the J & S incident and yet for no justifiable reason refused to provide Plaintiff with this information. The only logical conclusion to be drawn from Genlyte's decision to violate this Court's Order and refusal to provide information regarding the J&S fire is that there was a "want of merit" in the same. *Ins. Corp. of Ireland,* supra. Clearly, Genlyte realized that the information and evidence from the J & S incident, which was identical to the SGP loss, would have supported Plaintiff's theory as to cause and origin, and would have shown that these lenses do indeed fail exactly as alleged by Plaintiff. Further, Genlyte realize the information regarding the J&S fire would negate the contentions raised in its motions to dismiss. Consequently, Genlyte should be precluded from raising any defenses as to defect [Eighth and Ninth Affirmative Defenses] and spoliation. (**Exhibit K,** Answer to Complaint).[5]

### b) <u>Pursuant to Both Federal and Georgia State Law, the Jury May Infer that the Spoliated Evidence Would Have Been Harmful to Defendants</u>

Spoliation is "the destruction or significant alteration of evidence, or **the failure to preserve property for another's use as evidence** in pending… litigation." *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, (S.D.N.Y. 2003). A duty to preserve evidence "arises when the party **has notice that the evidence is relevant to litigation** or when a party should have known that the evidence may be relevant to future litigation." *Id.*

---

[5] It is worth noting that Defendants have not come before this Honorable Court with clean hands. The clean hands doctrine "bars a [party] from seeking judicial relief regarding a matter in which he or she is not free of guilt and does not have clean hands." *Merriam-Webster's Dictionary of Law,* Pg. 80, 1996. It would be unjust and inequitable to allow Defendants to seek sanctions against Plaintiff for spoliation when they themselves are guilty of having spoliated key pieces of evidence related to similar fire claims.

12

There are several different sanctions Georgia courts may apply when a party spoliates evidence, including a jury instruction on spoliation of evidence which raises a presumption against the spoliator. [To remedy prejudice resulting from spoliation of evidence, trial court may charge jury that spoliation of evidence creates rebuttable presumption that evidence would have been harmful to spoliator]. See, *Flury, R.A. Siegel*. "Unquestionably, the failure of a defendant in a civil case to testify or offer evidence within his ability to produce… may… be considered as a circumstance against him and may raise a presumption that the evidence would not be favorable to his position." *United States v. R. L. Roberson*, 233 F.2d 517 (1956).

In the instant case, Defendants admit that they not only **knew of the pending litigation**, but also **knew of the specific claims raised in Plaintiff's Complaint**, yet failed to preserve evidence related to those claims. (See Dep. of H. Wingerter, Pgs. 59-60). Harry Wingerter, the Quality Manager for Genlyte, testified as to his knowledge of; 1) the similarity between the facts of the J & S occurrence and the facts of the fire at SGP, 2) that the J & S occurrence involved the same model fixture, 3) that both fixtures were produced in 1997, and 4) that suit had been filed in the within case. (See Dep. of H. Wingerter, Pgs. 25-26, 39, 59-60). Therefore, there is no question as to Defendants' knowledge that the evidence they withheld and lost was relevant to the instant litigation. Simply stated, there is no excuse for Defendants' failure to not only disclose information regarding the J&S incident but to also preserve the physical evidence related to that fire.

Defendants' wanton and willful spoliation of evidence has caused Plaintiff to suffer substantial prejudice. The evidence spoliated by Defendants has not only prevented Plaintiff from garnering additional evidence to support its *prima facie* case against Genlyte but

13

has also restricted Plaintiff's ability to refute many of the contentions raised by Genlyte in its motions to dismiss. In light of the fact that Defendants prevented Plaintiff from investigating and establishing these facts by spoliating key evidence, it is proper for Defendants to be sanctioned in the form of an adverse inference jury instruction.

Respectfully submitted,

LAW OFFICES OF ROBERT A. STUTMAN, P.C

*Daniel Hogan* /s/

Dated: 8/8/07         By:_____

Kevin P. Smith, Esquire (admitted *pro hac vice*)
Daniel Hogan, Esquire (admitted *pro hac vice*)
Attorneys for Plaintiff
501 Office Center Drive, Suite 300
Ft. Washington, PA 19034
(215) 283-1177

14